## CHANGE OF BENEFICIARIES BY A POLICY HOLDER OF UNSOUND MIND.

Circuit Court of Cuyahoga County.

LAURA L. JORDAN v. THE MUTUAL LIFE INSURANCE COMPANY ET AL.

Decided, November 26, 1906.

*Insanity—Evidence of Egomania and Megalomania.*

An insane degenerate with paranoidal tendencies and delusions which take the form of egomania and megalomania, may continue in the pursuit of his daily business and exercise such self-restraint that those associated with him will not be aware of his condition, so that, where two alienists after an exhaustive examination unqualifiedly declare a person to have been suffering with that form of insanity, their testimony will be of more weight than that of numerous associates who came in contract with him in a business way.

HENRY, J. (orally); WINCH, J., and MARVIN, J., concur.

This is an appeal by the plaintiff. The action as originally begun was an action to recover the amount of an insurance policy issued by the Mutual Life Insurance Company; the defendant, to Frank Jordan, plaintiff being the widow of said Frank Jordan. And a part of the relief asked for by the prayer of the petition is, that a certain change of the beneficiaries that had been sought to be made by Frank Jordan in his lifetime, with the concurrence of the insurance company, should be set aside as null and void for one or more of three reasons.

First, that the plaintiff had paid some of the premiums upon the policy, upon the faith of an agreement that the policy should be taken out in her favor.

Second, that Frank Jordan, the insured, was at the time the change of beneficiaries was made, of unsound mind, and that the person who was made beneficiary under the change, namely, his sister, Maude A. Wood, fraudulently induced him to make such change not, however, by actual fraud, but by construction of law.

Third, that the policy's terms forbid an assignment without the consent of the beneficiary named therein.

As regards the first and third of these reasons, we may say without discussing them that we do not found our judgment upon them. There is no evidence tending to show that the state of facts claimed with reference to either of these grounds exists, and our construction of the policy and the provisions therein contained with reference to the change of beneficiary is not the construction which the plaintiff here seeks us to have put upon it.

With regard, however, to the second ground, namely, that Frank Jordan, the insured, was of unsound mind at the time the alleged change of beneficiary was made, and that, therefore, he was incapable of making a valid change, we have submitted to us the testimony of a great number of witnesses, pro and con.

Among the plaintiff's witnesses are two physicians of this city, experts, Dr. Aldrich and Dr. Upson, both of whom, upon an exhaustive examination by hypothetical questions and with respect to the results of an examination which they made of documentary matter of great variety, which was submitted to them, and the handwriting of Frank Jordan, testified unqualifiedly that he was of unsound mind; that he was an insane degenerate with paranoidal tendencies and delusions which took the form of egomania and megalomania and delusions of persecution imagined to have been suffered by him in the domestic affairs and as shown by other evidence resulting in an insane jealousy of his wife and extreme ill-treatment of her on several occasions in consequence of the delusions referred to. Their examination was exhaustive and their testimony in that behalf was, as I say, unqualified. If we say he was of sound mind, we must do so in the face of the positive testimony of these physicians. Moreover, a physician, one of the defendant's experts, Dr. Straight, as a witness, undertook to testify from his acquaintance with Mr. Jordan in his lifetime, that, although he was a man of some peculiarities of character and conduct, yet he was of perfectly sound mind. On cross-examination, he said that if Frank Jordan wrote the writings that were submitted to him upon the stand, he should be of the opinion the Jordan was insane.

A large number of business men of this community were examined as witnesses for the defendant, having been business associates of Mr. Jordon, who, by the way, was an insurance agent. He had a wide circle of acquaintances, was a member of the Chamber of Commerce and of a committee which was appointed a few years ago to get new members, and his work on that committee was very successful. A number of business acquaintances in this city, of high standing, who saw him from time to time in connection with his work on the Chamber of Commerce committee, or his professional duties and otherwise, testified on behalf of the defendant that in their judgment he was of sound mind. Several of them were quite emphatic that he was of sound mind, saying that the suspicion never entered their minds that he was insane.

Here there was a sharp conflict.

Referring again to the testimony of plaintiff's experts. Their testimony was to the effect that a person suffering from this form of insanity may continue in the discharge of his business and the duties thereof for a long period of time without his insanity necessarily interfering with his success therein. And it is possible for a man suffering from this form of mental trouble to continue for a period of time without his mental trouble being particularly noticeable, or even noticeable at all, to those who meet him from day to day while in the discharge of his duties. And it is true to a degree of such insane persons, as it is indeed of all persons, that they are capable of exercising some self-restraint in respect to making an exhibition or expression of their peculiar delusions, and, hence, it is not at all surprising, according to the testimony of these expert physicians, that the business associates of a man suffering under the form of insanity that the experts say Frank Jordan suffered from, should fail to observe that he was thus afflicted.

Without entering into a resume of the great variety of instances that were adduced in the testimony on the trial, which, for length, in this court was unprecedented, it is sufficient to say that the documentary matter which was presented to the experts and presented in evidence to us, we have examined carefully. It

consists, in the main, of books owned by Frank Jordan which he had marked by drawing lines around passages that struck him, on the margins of the pages, and by writings upon the fly-leaves.

The markings of the books was of itself very erratic, to say the least. He seemed to have a passion for marking his books, and some of them are marked page after page by pencil marks that disfigure the books, and marked without reference to anything in the printed page. But some of the pages are very significant, being with clear reference to the contents and meaning of the printed words upon the page. And the things that are written upon the fly-leaves of some of these books, so far as they are intelligible at all, and particularly of the Bible, would tend to show, according to the testimony of Dr. Straight, a hypocritical and immoral life; yet Dr. Straight testified that Jordan, if he went home and read the Bible for hours and days at a time and marked passages such as were marked, would be insane.

We have examined this bill which is marked at great length and these books, some of which are Meyer's Christian Living, Long's Thoughts of Marcus Aurelius, Clerk's Instructions to Christian Converts, Jordan's Kingship of Self-Control, etc., and if these experts, witnesses, have correctly detailed the indicia or symptoms of this species of insanity to which they testify, and if there is such a species of insanity as we have no doubt there is, we think from our examination that we have made of these documents, in the light of the instruction that we have received from these experts, on the subject of insanity, that their deductions from these writings and these books and the markings thereon, are correct.

We can not come to any other conclusion than that the man who made these entries in these books, and made these peculiar marks, was a man of unsound mind. And, without further discussion of the evidence and because our conclusions of fact require the judgment we render, we simply say that the judgment will take the form of a reformation or annullment of the change of beneficiary that was made by Frank Jordan, and a judgment

for the plaintiff against the insurance company for the amount of the policy.

I may say the insurance company is not contesting this policy; they have paid the proceeds into the hands of the Society for Savings, which is acting as receiver or trustee, by agreement of the parties.